BROWN, Circuit Judge,
concurring:
Emphasizing the Geneva Convention’s “strong mandatory language,” Op. 632, the panel’s opinion rejected Al Warafi’s proposed “functional” test in favor of the District Court’s “legal conclusion that the identification requirements of Article 24 constitute a sine qua non for protected status under Article 24,” Op. 631. “Without compliance with the requirements of the Geneva Conventions,” we concluded, “the Taliban’s personnel are not entitled to the protection of the Convention.” Op. 632. I write separately only to draw out the unstated significance of our holding. .
In Hamdan v. Rumsfeld, 548 U.S. 557, 126 S.Ct. 2749, 165 L.Ed.2d 723 (2006), the Court interpreted Common Article 3 — so-called because it appears in all four Geneva Conventions — to “afford[] some minimal protection[] falling short of full protection under the Conventions” to members of Al Qaeda, id. at 631, 126 S.Ct. 2749, “a transnational terrorist organization whose actions and actors do not fit existing legal norms and sanctions,” Fionnuala Ni Aoláin, Hamdan and Common Article 3: Did the Supreme Court Get It Right?, 91 Minn. L.Rev. 1523, 1548 (2007). While it is not clear that the text and purpose of Common Article 3 will bear the weight the Supreme Court assigns to it, that question is now one for the academy, see, e.g., Ingrid Detter, The Law of War and Illegal Combatants, 75 Geo. Wash. L. Rev. 1049, 1079-86 (2007), given we are duty-bound to apply Ham-dan in a manner consistent with its holding.
How Hamdan translates to present facts, however, may not be obvious. This case differs from the majority of detainee cases to have come before this court in one very significant way: the protections invoked emanate not from Common Article 3, but a specific, highly intertwined suite of Articles in the First Geneva Convention. Does Hamdan’s atextual and quixotic reading of the Common Article, we thus ask, provide a coherent framework for addressing and applying the Convention’s supplemental protections to the present detainee context? This point was certainly not lost on Al Warafi. In asking this court to forego the plain language of the Convention to adopt and apply a purely functional test to the “medic” status determination, Al Warafi pressed an interpretation *633 divorced from the text that inures to the benefit of terrorists and other irregular forces. In other words, Al Warafi has effectively argued that the expansive interpretation of treaty language begun in Hamdan should now reverberate through every Article of the Geneva Convention— all protections, not just the minimum protections of Common Article 3, should be made accessible to terrorists and their ilk.[1]
Hamdan, of course, requires no such thing. The Court’s analysis focused on the specific jurisdictional language of Common Article 3, see Hamdan, 548 U.S. at 630-31, 126 S.Ct. 2749, and the Article’s “important purpose,” id. at 631, 126 S.Ct. 2749 (observing that “the commentaries also make clear ‘that the scope of application of the Article must be as wide as possible’ ”)' This reasoning simply does not extend to Article 24 and the companion provisions.
And therein lies the true significance of today’s holding: in determining how the Convention operates and to whose benefit, courts must run a discrete calculus for each Article (or related series of Articles) that considers the treaty’s language, structure, history, and purpose. For all the reasons outlined in the District Court opinion, see Al Warafi v. Obama, 821 F.Supp.2d 47 (D.D.C.2011), I believe the court got it right in adopting a bright-line test. In addition to its “strong mandatory language,” Op. 632, Article 24 reflects an intricate regulatory scheme that implicates a unique balancing of interests; imposes potentially burdensome, affirmative obligations; attempts to remedy a particular historical wrong;. and, among other things, both implicitly and explicitly recognizes the role that formal military corps must play on both sides of the repatriation. Compliance, it follows, is a necessary condition to invoke • Article 24 protections. Hamdan’s willingness to bend the Geneva Convention to favor those who openly disregard the laws of war need not extend past Common Article 3.

. There was a suggestion at oral argument that as the de facto' government of Afghanistan, a signatory to -the Geneva Convention, the Taliban should also be accorded signatory status. Because Al Warafi has failed to produce the requisite indicia of protected status, however, we need not reach the vexing questions whether Al Warafi was a member of a transnational terrorist organization or the ■armed forces of a High Contracting Party, and if the former, whether he is categorically barred from invoking the supplemental protections of Article 24.